CLAUDE PITTS, APPELLANT, v. A. P. MAUPIN, RESPONDENT.—88 S. W. (2d) 384.

Kansas City Court of Appeals. November 12, 1935.

*E. H. Gamble* for appellant.

*Orestes Mitchell* and *Orestes Mitchell, Jr.,* for respondent.

BLAND, J.—This is an appeal from a judgment affirming an award of the compensation commission. Compensation is claimed as the result of the loss of claimant's right eye caused by a branch of a tree striking him in the eye while he was felling trees to be sawed into lumber.

The suit was prosecuted against A. P. Maupin and Grover Slawson et al. There was an award in favor of the claimant and against Grover Slawson but in favor of the defendant Maupin. The commission found that claimant was, at the time he was injured, employed by Grover Slawson; that A. P. Maupin was an independent contractor and that the work being performed was not that of the "usual business" of the said Maupin and that he was not liable under the provisions of Section 3308, Revised Statutes 1929.

As the award of the commission was in favor of the respondent, Maupin, it is incumbent upon us to take the evidence in its most favorable light to him. [Meyer v. Adams et al., 50 S. W. (2d) 744.]

The facts show that Maupin and his son were partners engaged in the seed business in King City, Gentry County, and that the former was the sole owner of a farm in Nodaway County, on which he desired to construct some corn cribs. In order to procure the lumber for this purpose he entered into a contract with a neighbor, one Watson, for 100,000 feet of lumber to be sawed by Maupin from standing trees upon Watson's farm. Maupin was to pay Watson $5 per 1000 feet for the lumber. The contract provided that Maupin should perform the work and pay all of the expenses for sawing and removing the timber.

Shortly after this contract was made Maupin entered into an oral contract with one, Grover Slawson, providing that the latter should cut the trees into logs, draw them to a sawmill and saw them into lumber, for which Slawson was to be paid "so much per hundred" feet of lumber sawed. Under this arrangement Slawson entered into three subcontracts; one with Ray Files, the owner of a portable

sawmill, to saw the logs into lumber; another with one Boyle to cut the trees into saw logs; another with his brother, Harry Slawson and one Buchanan, who were to drag the logs with horses from where they were cut to the sawmill. Pursuant to these subcontracts Files established his sawmill on the land, Boyle began the log cutting and Slawson and Buchanan began dragging the logs to the mill. However, Boyle did not have sufficient helpers to cut the logs fast enough for the full operation of the sawmill and, thereupon, Grover Slawson hired more timber cutters, one of whom was the claimant.

There is some evidence in the record that claimant was hired by one Bush, a tenant on the Maupin farm, but there is evidence tending to show that the said Bush had no authority to hire claimant on behalf of Maupin. There was ample testimony that claimant was employed by Grover Slawson, who paid him for his work. Claimant accepted the employment and engaged one man as his helper and divided his pay with the latter. It was while they were engaged in the work that claimant was injured as aforesaid. Grover Slawson paid Files and Boyle all that their employees earned and they in turn paid their employees. Grover Slawson also paid Harry Slawson and Buchanan, the log haulers. Maupin furnished two workmen who hauled the sawed lumber away from the mill. While Pitts and Babb were cutting trees Maupin came there on various occasions and gave some directions in reference to the work, but there is no testimony and no serious claim made that Maupin so interfered with the work as to deprive him of his status as an employer of an independent contractor. On the law points the case is briefed on both sides on the theory that he was such an employer. It appears that Grover Slawson carried no insurance under the compensation act.

Maupin testified that the work being done on the Watson farm was no part of his regular business, his claim being that his usual business was that of a dealer in seeds; that "cutting timber and so forth is not a part of my regular business. My main business is the seed business. In addition to that I bought a little land because I thought it was cheap."

The commission found that the claimant was employed by Grover Slawson; that the "cutting and the sawing of the timber was not the usual business of Maupin;" that Maupin had nothing to do with the work as such and that (Grover) Slawson was an independent contractor.

The determination of this case depends upon the proper interpretation of Clause (a), Section 3308, Revised Statutes 1929, which reads as follows:

"Any person who has work done under a contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this

chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.''

It is contended that, although Maupin was having the work done under a contract, it was being performed on or about his premises and in the operation of the usual business which he there carried on, within the meaning of the statute; that the evidence shows that the timber cutting being done was not only the usual but, in fact, the only business that Maupin carried on at the place in question, citing in support of this contention, among others, the case of Simpson v. New Madrid Stave Co., 52 S. W. (2d) 615. In that case the defendant's business was that of manufacturing staves at its plant in New Madrid. It engaged the plaintiff as an independent contractor to cut a large amount of timber from lands on the Kentucky side of the Mississippi River. During the cutting plaintiff was injured by a limb falling upon him. The court held that the stave company, in its Kentucky activities, was in the operation of its usual business; that while the defendant was engaged in the manufacturing of staves at its plant in New Madrid, that the ''usual business of the stave company as it was being conducted consisted of cutting and transporting timber to the company's plant and manufacturing the timber into staves;'' that the ''premises of the employer is any place where, in the usual operation of his business, it is necessary for those whom he has employed to do the work to be while doing it.''

Claimant says that ''Just as in the Simpson case, cutting timber in Kentucky was the usual business of the New Madrid Stave Company on the premises where Simpson was injured, so in this instance cutting timber on the Watson land was the usual business of Maupin, which he there carried on, within the meaning of Section 3308 (a).''

. . .

''The word 'there' as used in the subdivision, means, in this instance, the Watson farm. That was the place where Maupin, through Slawson, was engaged by contract in the 'operation' of converting trees into lumber. That was the 'business' which Maupin 'there' carried on. Pitts, the subcontractor under Slawson, was injured while engaged in 'an operation' that constituted a part of that business carried on through Slawson by Maupin on that farm. Hence Maupin and Pitts are embraced within the first paragraph of Section 3308.'' . . .

''Unless the testimony of Maupin that lumbering was not his usual business, and that his usual business was farming and dealing in seeds exempts him from liability, there is no evidence in the record that does so. We contend that it does not, and that whether his main business was lumbering or something else is beside the issue. under Section 3308 (a).''

A person may have more than one kind of business, within the meaning of the statute. In fact it would appear in the case at bar that Maupin had two businesses; one the seed business in the town of King City in Gentry County and the other the farming business in Nodaway County. It does not follow, however, that any kind of an endeavor of a business nature that one may undertake brands him as being engaged in that business, *as a business,* within the meaning of the statute. The statute says that in order for the employer to be liable he must be carrying on a business at the place of the injury. The word "business" is used in the statute in the sense of "any particular occupation or employment habitually engaged in, especially for livelihood or gain." (See Webster's New International Dictionary.) Of course it may be engaged in for either a brief or a considerable length of time.

If all activities that one might engage in renders him liable as for operating a business, he would be liable in probably all cases where the work was being done by an independent contractor. In fact we can think of no state of facts under such circumstances where he would not be liable. If the Legislature had intended that result generally it would have said so but it was careful not to do that, as it provided, in order for there to be a recovery against the employer, the operation must not only be of the usual business which the employer carries on at his premises where the accident occurs, but the employee must be injured in the usual course of his employer's business.

It would appear that the cutting and sawing of the timber in question, if anything, was connected with the business of Maupin as a farmer. Farmers are exempt from the provisions of the compensation act (Sec. 3303, R. S. 1929). However, we need go no further than to say that if it was not, then he was not engaged in the operation of any business as such but was merely engaged in a casual undertaking to procure a limited supply of lumber for his own use. The lumbering business was not Maupin's business in any sense. There is no evidence that he engaged in this business in any manner. He was merely procuring the lumber in question to be used on his farm in connection with his farming operations.

It is urged by the claimant that there is some ambiguity in the statute, but we find none. The word "his" in the clause reading: "While doing the work which is in the usual course of his business" plainly refers to the employer and not the employee."

We have examined the cases cited by claimant and find that they are not in point. In the case of DeLonjay v. Hartford Accident & Indemnity Co., 35 S. W. (2d) 911, the work was that of remodeling another's building, which was the usual business of the defendant, a contracting company.

In the case of Pruitt v. Harker, 43 S. W. (2d) 769, the defendant

owned several thousand acres of timber on which was located five sawmills and she was engaged in the business of cutting timber for mercantile purposes when the accident happened to one of the timber cutters.

In the case of Meyer v. Adams, 50 S. W. (2d) 744, defendants owned a tract of timber and were having lumber cut therefrom to fill a contract with another "for 4000 feet of riprap lumber and some piling," when plaintiff was injured in the cutting operations.

In the case of Simpson v. New Madrid Stave Co., supra, the defendant was engaged in its business as a stave manufacturer when claimant was injured.

Under all of the circumstances, we are of the opinion that the judgment should be affirmed and it is so ordered. All concur.