**The SPECIAL DISTRICT FOR the EDUCATION AND TRAINING OF HANDICAPPED CHILDREN OF ST. LOUIS COUNTY, Missouri, Plaintiff-Appellant,**

**State of Missouri, Intervenor Plaintiff-Appellant,**

**v.**

**Hubert WHEELER, Commissioner of Education, State of Missouri, et al., Defendants-Respondents.**

No. 51909.

Supreme Court of Missouri, En Banc.

Sept. 12, 1966.

Rehearings Denied Nov. 14, 1966.

Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Richard Roth, Clayton, Carson, Inglish, Monaco & Coil, John W. Inglish, Jefferson City, for appellant Special Dist. for Education etc.

Norman H. Anderson, Atty. Gen., Louis C. Defeo, Jr., Asst. Atty. Gen., Jefferson City, for appellant State of Missouri.

Thompson Mitchell Douglas & Neill, James M. Douglas, William G. Guerri,

Richard W. Metz, St. Louis, for respondents.

Franklin C. Salisbury, Washington, D. C., Harry C. Avery, St. Louis, amici curiæ Protestants and Other Americans United for Separation of Church and State.

Edward T. Matheny, Jr., Larry L. Mc-Mullen, Caldwell, Blackwell, Sanders & Matheny, Kansas City, for School Dist. of Kansas City, Mo., amici curiæ.

Robert P. Baine, Jr., Clayton, Amicus Parents and Children.

Huger, Cramer & Pollman, Bernard J. Huger, Walter H. Pollman, St. Louis, Downey, Sullivan & McCormick, Thomas M. Sullivan, Kansas City, George A. Rozier, Jefferson City, Ben J. Francka, Springfield, for these amici curiæ Vincent Knese and Mary Ann Knese, His Wife.

Joseph B. Robison, New York City, Gerald Tockman, Jerome W. Sidel, St. Louis, amici curiæ American Jewish Congress, Missouri State Region, and Jewish Labor Committee, St. Louis Chapter.

DONNELLY, Judge.

Plaintiff is the Special District for the Education and Training of Handicapped Children of St. Louis County, Missouri, a public school district. Defendants are Hubert Wheeler, State Commissioner of Education, and the members of the State Board of Education. Intervenor Plaintiff is the State of Missouri by its Attorney General.

During the 1963–64 school year, the Special District provided speech therapy to parochial school children by sending its speech teachers (clinicians) into the parochial schools. On February 27, 1964 the Special District brought this suit for a declaratory judgment asserting the validity of its 1963–64 practice after the State Board of Education refused to reimburse the Special District for its expenses in providing such therapy.

During the 1964–65 school year the Special District changed its program and provided speech therapy for parochial school children in buildings maintained by the Special District. Parochial school children who desired to receive such therapy were released from the parochial schools for part of their regular six-hour school day.

During the 1965–66 school year, the Special District continued to offer speech therapy for parochial school children in buildings which it maintained. However, the time spent by the parochial school children for such therapy was in addition to their regular school day. The validity of this particular practice is not before this Court for review and we express no opinion as to it.

On October 12, 1965, the Circuit Court of Cole County, Missouri, entered judgment holding invalid the practices followed in the 1963–64 school year and the 1964–65 school year. An appeal was perfected to this Court.

Section 5 of Article IX of the Missouri Constitution, V.A.M.S., reads as follows: "The proceeds of all certificates of indebtedness due the state school fund, and all moneys, bonds, lands, and other property belonging to or donated to any state fund for public school purposes, and the net proceeds of all sales of lands and other property and effects that may accrue to the state by escheat, shall be paid into the state treasury, and securely invested under the supervision of the state board of education, and sacredly preserved as a public school fund the annual income of which shall be faithfully appropriated for establishing and maintaining free public schools, and for no other uses or purposes whatsoever."

Section 161.180 RSMo 1959, V.A.M.S., read as follows: "There is hereby created a state public school fund which shall consist of all certificates of indebtedness issued under the provisions of this law, and all moneys, bonds, lands and other prop-

erties belonging to or donated to any state fund for public school purposes and the net proceeds of all sales of lands and other property and effects that may accrue to the state by escheat. All such funds shall be paid into the state treasury and securely invested by the state board of education, and sacredly preserved as a public school fund, the annual income of which shall be faithfully appropriated for establishing and maintaining free public schools and for no other uses or purposes whatsoever."

Section 3(a) of Article IX of the Missouri Constitution reads as follows: "All appropriations by the state for the support of free public schools and the income from the public school fund shall be paid at least annually and distributed according to law."

Section 3(b) of Article IX of the Missouri Constitution reads as follows: "In event the public school fund provided and set apart by law for the support of free public schools, shall be insufficient to sustain free schools at least eight months in every year in each school district of the state, the general assembly may provide for such deficiency; but in no case shall there be set apart less than twenty-five per cent of the state revenue, exclusive of interest and sinking fund, to be applied annually to the support of the free public schools."

The Seventy-Second General Assembly passed an act appropriating from the State School Moneys Fund to the State Board of Education, for the period beginning July 1, 1963, and ending June 30, 1965, "[A]ll sums credited to the State School Moneys Fund from whatever source and not elsewhere appropriated, or as much as may be necessary for the support of the free public schools under the Foundation Plan." Laws of Missouri, 1963, p. 8.

In McVey v. Hawkins, 364 Mo. 44, 258 S.W.2d 927, this Court en Banc held that the use of public school funds to transport pupils to and from a parochial school was not for the purpose of maintaining free public schools and that such use was unlawful. Is the use of public school moneys to send speech teachers of the Special District into the parochial schools for speech therapy a use for the purpose of maintaining free public schools? We think not. The use of public school funds for the education of pupils in parochial schools is not for the purpose of maintaining free public schools. We hold the 1963–64 practice unlawful and invalid.

The trial court found the 1964–65 practice of providing speech therapy during regular school hours for parochial school children in buildings maintained by the Special District contravened the Missouri compulsory attendance law (§ 164.010, RS. Mo 1959, V.A.M.S.; see § 167.031, Laws 1963, p. 274, § 8–3, effective July 1, 1965). The decisive portion of both statutes reads as follows: "Every parent, guardian or other person in this state having charge, control or custody of a child between the ages of seven and sixteen years shall cause the child to attend regularly some day school, public, private, parochial or parish, * * *."

The school day is a six-hour day. Section 163.020, RSMo 1959, V.A.M.S.; §. 160.041, Laws 1963, p. 209, § 1–4, effective July 1, 1965.

The parties stipulated that "* * parochial school children are released from their regular schools for part of their regular six-hour school day so that they may attend speech correction classes in buildings maintained by the Plaintiff District." By statute it is mandatory that each child "attend regularly some day school." We are asked to change the statutory requirement to read "some day schools" or to read "some day school or schools." We cannot do this. We find no ambiguity which would permit us to judicially ascertain the legislative intent. We must apply the statute as written.

Foremost Dairies, Inc. v. Thomason, Mo., 384 S.W.2d 651, 659. Our view is well stated in State v. Pilkinton, Mo.App., 310 S.W.2d 304, at 309, 310, as follows: "In the construction and application of statutes bearing upon school and educational matters * * * as in the construction and application of other statutes * * *, our appellate courts have observed time and again that the wisdom of legislative policy, as reflected and expressed in statutory enactments, is for the General Assembly and is beyond and without the pale of judicial inquiry and review. Bluntly put, our function is to declare, apply and enforce the law as we find it, not to legislate by judicial fiat. * * * The General Assembly is presumed to have intended what it has stated directly and unambiguously, and we may not, under the guise of construction, add to or take from the clear and definite terms of Section 164.010."

The Special District directs our attention to subparagraph (1) of the compulsory attendance law which read as follows: "(1) A child who, to the satisfaction of the superintendent of schools of the district in which he resides or another person authorized to act for him, is determined to be mentally or physically incapacitated may be excused from attendance at school for the full time required, or any part thereof; * * *", and contend that the parochial school children involved here come under this exception. The record does not support this assertion. There is no showing that the "determination" required was made. Had such a "determination" been made, the constitutional validity of the practice could be subjected to judicial scrutiny. See Sections 6 and 7 of Article I and Section 8 of Article IX of the Missouri Constitution. However, this question is not before this Court for review and we express no opinion as to it.

■ The Special District and the Attorney General contend that the compulsory attendance law does not apply here in that it is properly directed against the parents or legal custodians of the children and not against the defendants. This contention is without merit. The State Commissioner of Education, with others, is charged with the duty of enforcing the compulsory attendance law. See § 164.090 RSMo 1959, effective prior to July 1, 1965 and § 167.111, Laws 1963, p. 277 § 8–11, effective July 1, 1965. Also, Section 3(a) of Article IX of the Missouri Constitution requires that "appropriations by the state for the support of free public schools * * * shall be * * * distributed according to law."

■ The Attorney General contends the condemnation of the practice here in question by the trial court is unconstitutional because it deprives non-public school pupils of liberty without due process of law and of equal protection of the laws. There is no merit in this contention. The fact that parochial school students, not public school students, are involved here, is incidental. There is nothing in the record to indicate the trial court invoked the compulsory attendance law because the students were parochial school students and not public school students. We recognize inherent difficulties in reconciling the desire on the one hand that children not be discriminated against because of their religious beliefs and the desire on the other hand that there be no acts permitted which would involve constitutional invalidity. We also recognize that children cannot be compelled to attend public schools when their parents desire to send them to parochial schools. Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468. However, these questions must be treated and resolved another day. If the General Assembly should decide to change the compulsory attendance law to permit attendance by students generally at more than one school during the school day, and constitutional questions arise incident to practices initiated pursuant thereto, we will consider them when properly presented to us.

■ The Special District contends the trial court erred in ignoring an opinion

rendered by the Attorney General and in not directing payment of at least partial state aid. These particular contentions were not asserted in the motions for new trial and cannot be considered on appeal. Berghorn v. Reorganized School Dist. No. 8, Franklin County, 364 Mo. 121, 260 S.W.2d 573.

The judgment is affirmed.

STORCKMAN, C. J., and HOLMAN, HENLEY and EAGER, JJ., concur.

FINCH, J., concurs in part and dissents in part in separate opinion filed.

HYDE, J., concurs in part and dissents in part and concurs in separate opinion of FINCH, J.

## CONCURRING AND DISSENTING OPINION

FINCH, Judge.

I respectfully dissent from that portion of the majority opinion which holds that the practice followed during the 1964–1965 school year violated the Compulsory Attendance Law, § 164.010 (all references are to RSMo 1959 and V.A.M.S., unless otherwise indicated).[1] I concur in the majority opinion with reference to the 1963–1964 school year.

During the 1964–1965 school year some speech defective children, regularly enrolled in parochial schools, were released twice a week to permit them to attend special speech therapy classes in schools maintained and operated by the Special District for the Education and Training of Handicapped Children of St. Louis County, Missouri. The Special District did not provide transportation for these children.

The single question with reference to the 1964–1965 school year which was raised by the pleadings, tried by Judge Blair and briefed and argued by the parties in this court is whether the 1964–1965 practice violated the Missouri Compulsory Attendance Law.

Section 164.010 was as follows:

"Every parent, guardian or other person in this state having charge, control or custody of a child between the ages of seven and sixteen years shall cause the child to attend regularly some day school, public, private, parochial or parish, not less than the entire time the school which the child attends is in session or shall provide the child at home with regular daily instructions during the usual school hours which shall, in the judgment of a court of competent jurisdiction, be at least substantially equivalent to the instruction given children of like age in the day schools in the locality in which the child resides; except that

"(1) A child who, to the satisfaction of the superintendent of schools of the district in which he resides or another person authorized to act for him, is determined to be mentally or physically incapacitated may be excused from attendance at school for the full time required, or any part thereof; or

"(2) A child between fourteen and sixteen years of age may be excused from attendance at school for the full time required, or any part thereof, by the superintendent of schools or other person authorized to act for him or by a court of competent jurisdiction when legal employment has been obtained by the child and found to be desirable, and after the parents or guardian of the child have been advised of the pending action."

We must determine what is meant by the words "attend regularly some day school,

---

1. Section 164.010 was amended by Laws 1963, page 274, § 8–3, effective July 1, 1965, and appears now as § 167.031.

public, private, parochial or parish * * *," considering, of course, the entire text of the statute. The majority opinion holds that the language is unambiguous and means that a child must attend a single school the entire time the school is open during its regular school term.

I do not agree that the language is unambiguous. The word "some" does not necessarily and always mean "single". One definition in Webster's Third International Dictionary is "being one, a part, or an unspecified number of something." Walton v. United States Steel Corp., Mo., 362 S.W.2d 617, 625.[2]

The interpretation of the language of the statute by the majority opinion poses numerous questions. Here are a few: If a family moves from one community to another during the school year and transfers their child to a different school, have they violated the Compulsory Attendance Law? If, in a city such as St. Louis where a single school district operates many schools, a child is transferred from one school to another during the school year (perhaps to relieve overcrowding or to utilize special facilities in another school, or for some other purpose), has § 164.010 (now § 167.-031) been violated? If, as in Kansas City, the school district arranges for certain bright students who are subject to the Compulsory Attendance Act to be released at certain hours during the regular school day to take courses in the Junior College (a separate district) and thus be dually enrolled, has the statute been violated? If § 164.010 means what the majority opinion says it means, the answer to all these questions must be in the affirmative. I do not believe that the statute so provides. I do not read it to say that dual enrollment is prohibited or that a transfer from one school to another during a school year is forbidden. I cannot accept an interpretation of the language which makes parents guilty of a misdemeanor if they keep their child in full-time attandance but dually enroll him or transfer him from one school to another during the school year.

I am of the opinion that the language in question is ambiguous and that other interpretations are possible. For example, it is arguable that when the Act refers to some school, it means some school district. This would permit transfers between schools within the single school district or dual enrollment in the schools of such district without violating the statute. Such a result, however, necessarily recognizes that the Act is ambiguous and that we must construe it to mean some school district, because the statute obviously does not clearly and specifically say that. This construction, however, still would not solve the problem of a transfer during a school year between school districts or of dual enrollment such as enrollment in the Kansas City public schools and in the Kansas City Junior College.

A third construction of the language of the statute would be that the words "some school" in reality mean some school or schools. This would permit transfers between as well as within school districts and would permit dual enrollment such as that in Kansas City.

Where the language of a statute is ambiguous, it is proper to ascertain the legislative intent in construing the statute. Household Finance Corporation v. Robertson et al., Mo., 364 S.W.2d 595 [5, 6]. In so doing, we must consider the evil which the statute sought to remedy. This court stated in Haynes v. Unemployment Compensation Commission, 353 Mo. 540, 547, 183 S.W.2d 77, 82: " * * * a statute must be constructed in the light of the evil which it seeks to remedy and in light of conditions obtaining at the time of its enactment."

2. In 81 C.J.S. p. 391, under the word "Some," it is stated that, "The term 'some' is uncertain in its signification," and in footnote 17 on that page appears the following quotation: " 'Some' is a term too uncertain in its signification to sustain a verdict for any definite amount. It may mean a single ounce, or ten thousand tons, a single quart, or twenty thousand bushels."

The historical causes which resulted in compulsory attendance laws in this country are discussed by Thomas E. Finegan, former Superintendent of Public Instruction for the State of Pennsylvania, in Encyclopedia Americana, 1957 Edition, Vol. 9, pp. 599, et seq., "Education, Compulsory." The article points out that the rise of child labor and increasing immigration created conditions which interfered with the education of children and created various social and economic problems. Acts such as the Missouri Compulsory Attendance Law of 1905 were adopted to require school attendance and thereby attack these problems. The title of that first Act was as follows: "AN ACT to enforce the constitutional right of every child in the state to an education, to provide for truant or parental schools and attendance officers in cities of ten thousand population or more and to prohibit the employment of children during school hours." Laws 1905, p. 146. It shows a purpose to keep children in school and not permit them to be engaged in child labor during school hours. Nothing in the title is suggestive of an intention to require attendance at a single school for the entire school year.

It will be noted that § 164.010 contains two exceptions. Both relate to when a child may attend less than full time. The first exception is in the case of mentally and physically handicapped children who may be excused part time or full time under certain circumstances, and the second relates to children between fourteen and sixteen who are employed under certain specified conditions. There are no exceptions in the statute relative to where a child shall attend. Rather, they are concerned only with instances when a child shall be excused from full time attendance. This is understandable in view of the purpose of the Act to require full-time attendance of children of the designated age group.

The history of this legislation and the language of the Act demonstrate that the purpose of this legislation was to require that children of specified ages receive a specified minimum of school instruction. They could go to public or private or parochial schools, but they must go full time. The purpose of the Act was not to require that such instruction be at a single school for the entire term.

The construction of the Missouri statute which I would adopt finds support in language in the recent decision of the Appellate Court of Illinois, First District, Second Division, in the case of Morton et al. v. Board of Education of the City of Chicago et al., 69 Ill.App.2d 38, 216 N.E.2d 305. In that case plaintiff sought to enjoin the school board from maintaining a dual enrollment program. Students took English, Social Studies, Music and Art at the St. Paul High School, a nonpublic school, and the remainder of their courses at the John F. Kennedy High School, a public school. The attack was on the ground that this violated the Compulsory Attendance Law of Illinois, § 26-1, Illinois Revised Statutes 1963, Chapter 122. In the opinion the court says, 1. c. 308: "The dual enrollment program does not violate Section 26-1 of the School Code. Any child within the ages of 7 and 16 years is required 'to attend some public school in the district wherein the child resides the entire time it is in session during the regular school term' unless the child falls within one of the four exceptions. In the event that the child does come within one of the exceptions it is not necessary that he 'attend some public school in the district wherein [he] resides *the entire time* it is in session.' [Emphasis supplied.] Since the object of the compulsory attendance law is that all children be educated and not that they be educated in any particular manner or place, part-time enrollment in a school and part-time enrollment in a nonpublic school is permitted by Section 26-1,

so long as the child receives a complete education. See People v. Levisen, 404 Ill. 574, 90 N.E.2d 213, 14 A.L.R.2d 1364." The Illinois statute differs somewhat from the Missouri Act but the discussion of the purpose of the Act and its effect on dual enrollment is pertinent.

Finally, it should be remembered that § 167.061 [3] is a penal statute. It provides that any parent, guardian or other person having charge, control or custody of a child subject to the Act is guilty of a misdemeanor if he does not cause the child to attend school in accordance with the statute. Violation is punishable by fine or imprisonment in jail. Consequently, the statute is to be construed strictly against the State. This is an additional reason for construing the statute so that a parent is not guilty of a misdemeanor if he dually enrolls his child or transfers the child from one school to another. If the parent would not violate the statute by such actions, the 1964–1965 practice was not unlawful.

The trial court held that the 1964–1965 practice violated § 164.010 and that it also would be violative of § 167.031. I would reverse that portion of the decision.

On Motion for Rehearing

PER CURIAM.

The State of Missouri by its Attorney General has filed a motion for rehearing wherein it is contended that our interpretation of the compulsory attendance law permits dual attendance by public school pupils, but denies the same to non-public school pupils. In this case only parochial school pupils are involved. The opinion does not hold that the compulsory attendance law is not applicable equally to public school pupils. That issue is not involved in this case.

3. The section which provided for punishment for violation of § 164.010 was § 164.-060, which also was repealed by the 1963 Act.