Dr. Arthur L. Mallory Commissioner of Education Department of Elementary and Secondary Education Jefferson State Office Building Jefferson City, Missouri 65101
Dear Dr. Mallory:
This opinion is issued in response to your request for an official ruling on the following questions:
 "I. May the public school districts of Missouri use funds available to them under Part B of Title IV of the Elementary and Secondary Education Act of 1965, as amended by P.L. 93-380, to provide each of the following services to children attending nonpublic schools;
 (1) the loaning of library resources, including library books and other printed and published materials;
(2) the loaning of textbooks;
 (3) the loaning of instructional equipment and other instructional materials;
 (4) the provision of guidance counseling and testing services and materials, which may include personal services.
 II. May the Department of Elementary and Secondary Education provide, in its Annual Program Plan for Title IV, the assurance that the public school districts will comply with the requirements of Section 406 of Title IV, relating to the participation of pupils and teachers in nonpublic elementary and secondary schools in all the services under Part B of the Act, as required by Section 403(a) (3) of Title IV."
You have further stated that the use of the material and services in Question I would take place on nonpublic school premises, and this opinion is based on those circumstances.
 I
The federal program providing financial assistance to local educational agencies for libraries and learning resources (Part B, Title IV, ESEA of 1965) is found in 20 U.S.C. § 1801 through1821. The statutory scheme for the disbursement of such federal financial assistance provides, in pertinent part, for lump sum grants to the several state educational agencies based roughly on the school age population within the state (Section 1802 (b)). Each state educational agency desiring to receive grants must, with the aid of a state advisory council, submit a plan outlining its program for distribution of the allotment to local educational agencies (generally school districts which actually expend the funds) according to their enrollment on an equitable basis, with special emphasis, however, on financially deserving agencies (Section 1803). The purposes for which the grant is made include the acquisition of school library resources, textbooks, and other printed and published instructional material; the acquisition of instructional equipment; testing services and materials and guidance counseling services, which may include personal services (Section 1821 (a)).
Section 1806 provides:
 "Participation of children enrolled in private schools — Secular, neutral, and non-ideological services, materials, and equipment and other arrangements for benefit of children in private schools
 "(a) To the extent consistent with the number of children in the school district of a local educational agency (which is a recipient of funds under this subchapter or which serves the area in which a program or project assisted under this subchapter is located) who are enrolled in private nonprofit elementary and secondary schools, such agency, after consultation with the appropriate private school officials, shall provide for the benefit of such children in such schools secular, neutral, and nonideological services, materials, and equipment including the repair, minor remodeling, or construction of public school facilities as may be necessary for their provision (consistent with subsection (c) of this section), or, if such services, materials, and equipment are not feasible or necessary in one or more such private schools as determined by the local educational agency after consultation with the appropriate private school officials, shall provide such other arrangements as will assure equitable participation of such children in the purposes and benefits of this subchapter.
 Equal expenditures
 "(b) Expenditures for programs pursuant to subsection (a) of this section shall be equal (consistent with the number of children to be served) to expenditures for programs for children enrolled in the public schools of the local educational agency, taking into account the needs of the individual children and other factors (pursuant to criteria supplied by the Commissioner) which relate to such expenditures, and when funds available to a local educational agency under this subchapter are used to concentrate programs or projects on a particular group, attendance area, or grade or age level, children enrolled in private schools who are included within the group, attendance areas, or grade or age level selected for such concentration shall, after consultation with the appropriate private school officials, be assured equitable participation in the purposes and benefits of such programs or projects.
 Administration
 "(c) (1) The control of funds provided under this subchapter and title to materials, equipment, and property repaired, remodeled or constructed therewith shall be in a public agency for the uses and purposes provided in this subchapter, and a public agency shall administer such funds and property.
 "(2) The provision of services pursuant to this section shall be provided by employees of a public agency or through contract by such public agency with a person, an association, agency, or corporation who or which in the provision of such services is independent of such private school and of any religious organization, and such employment or contract shall be under the control and supervision of such public agency, and the funds provided under this subchapter shall not be commingled with State or local funds.
 Waiver of requirement of State participation
 "(d) If a State is prohibited by law from providing for the participation in programs of children enrolled in private elementary and secondary schools, as required by this section, the Commissioner may waive such requirement and shall arrange for the provision of services to such children through arrangements which shall be subject to the requirements of this section.
 Arrangements for services where State agency fails to provide for participation on equitable basis
 "(e) If the Commissioner determines that a State or a local educational agency has substantially failed to provide for the participation on an equitable basis of children enrolled in private elementary and secondary schools as required by this section, he shall arrange for the provision of services to such children through arrangements which shall be subject to the requirements of this section.
 Payment of cost of arranged services from appropriate State allotments
 "(f) When the Commissioner arranges for services pursuant to this section, he shall, after consultation with the appropriate public and private school officials, pay the cost of such services from the appropriate allotment of the State under this subchapter."
There is no question but that Congress intended private and parochial schools to benefit from these grants, whether through state and local administration or directly from the federal government. Because control of funds and title to materials is vested in the local public agency (Section 1806(c) (1)), the provision of such materials and services to nonpublic school children is typically accomplished through contractual and lending arrangements. The question you have raised is whether the Department of Elementary and Secondary Education or the local public school districts in this state may participate in making the services outlined above available to children in nonpublic schools.
In Mallory v. Barrera, 544 S.W.2d 556 (Mo.Banc 1976), the Missouri Supreme Court examined Title I of the Elementary and Secondary Education Act of 1965, which provides federal financial assistance for the benefit of educationally deprived children in areas with concentrations of low-income families. Nonpublic school participation in the program is mandated by Title I, and the precise issue raised in Mallory was whether or not Missouri law would permit the use of public school personnel paid with Title I funds to provide teaching services to private school children on the premises of private (sectarian and nonsectarian) schools during regular school hours. The court held,544 S.W.2d at 561:
 "We are inclined to the view, and hold, (1) that when these funds are paid to the state, as required by the Act (20 U.S.C. § 241g(a)(1)), they must be deposited in the state treasury; (2) that when so deposited, these funds are held by the state in trust for the uses and purposes specified in the Title I program approved by the Federal Commissioner, and may be appropriated and used by the state for such of those purposes as are not proscribed by the laws of this state; (3) that that part of these funds in a Title I project which has been approved by the Federal Commissioner for use in a free public school is `money donated to [a] state fund for public school purposes' within the meaning of the laws of Missouri; (4) that the use of any part of Title I funds by the state to provide teaching services to elementary and secondary school children on the premises of parochial schools would constitute the use of public funds (a) in aid of a denomination of religion proscribed by Art. I, § 7; and (b) to help to support or sustain a school controlled by a sectarian denomination proscribed by Mo. Const. Art. IX, § 8. Harfst v. Hoegen, 349 Mo. 808, 163 S.W.2d 609, 613-614[8, 10] (Mo. banc 1942); Berghorn v. Reorganized School District No. 8, 364 Mo. 121, 260 S.W.2d 573, 582-583
(1953); Paster v. Tussey, 512 S.W.2d 97 (Mo. banc 1974)." (footnotes omitted)
Thus, where federal funds are paid into the state treasury, they are public funds of the state and may not be spent for purposes prohibited by the Missouri Constitution. It should be noted that Title IV funds, like Title I funds, are paid to the state for deposit in the state treasury, 20 U.S.C. § 1802; Mallory, supra at 561, n. 10. The question, therefore, becomes whether or not the purposes for which Title IV funds are to be spent are prohibited by the Missouri Constitution.
In Mallory, the court held that public funds of the state may not be used to provide teaching services to children on the premises of parochial schools. It has also been held that public funds may not be used to provide textbooks for use in parochial schools, Paster v. Tussey, 512 S.W.2d 97 (Mo.Banc 1974); nor may they be used to provide transportation for parochial school students, McVey v. Hawkins, 258 S.W.2d 927 (Mo.Banc 1953); nor may they be used to provide speech clinicians and speech therapy to parochial school children, Special District for Education andTraining of Handicapped Children of St. Louis County v. Wheeler,408 S.W.2d 60 (Mo.Banc 1966).
Title IV funds are used to provide library resources, textbooks, instructional materials, and testing and guidance services and materials. While not all of these particular services have been specifically examined by the courts of this state, we are unable to find any factor which might distinguish these services from those the provision of which to nonpublic schools has been ruled unconstitutional in Mallory, Paster, McVey, and SpecialDistrict, supra. In Mallory, supra at 560, the court restated its holding from Special District, supra at 63:
 ". . . `[t]he use of public school funds for the education of pupils in parochial schools is not for the purpose of maintaining free public schools' within the meaning of Mo. Const. Art. IX, § 5, . . ." (Emphasis supplied)
Because library resources, textbooks, instructional equipment, and testing and guidance services and materials unquestionably contribute to the education of pupils, we conclude that neither the Department of Elementary and Secondary Education nor the local educational agencies who administer Title IV funds may spend such funds to provide the above-mentioned materials and services to children attending nonpublic schools under the laws of this state.
 II
Section 403(a) (3) of Title IV of the Elementary and Secondary Education Act of 1965 (29 U.S.C. § 1803(a) (3)) requires the state educational agency in preparing its plan to provide:
 ". . . assurances that the requirements of section 1806 of this title (relating to the participation of pupils and teachers in nonpublic elementary and secondary schools) will be met, or certifies that such requirements cannot legally be met in such State;"
In view of the conclusion reached in answer to your first question, it is the opinion of this office that the Department of Elementary and Secondary Education may not provide assurances that the requirements of Section 1806 will be met in this state.
CONCLUSION
It is the opinion of this office that the public school districts in this state may not use funds available to them under Part B of Title IV of the Elementary and Secondary Education Act of 1965 to provide the services described therein to nonpublic school children on nonpublic school premises. It is the further opinion of this office that the Department of Elementary and Secondary Education may not provide assurances pursuant to Section 403(a) (3) of Title IV (20 U.S.C. § 1803(a) (3)) that Title IV funds will be used to benefit children attending nonpublic schools as required by Section 406 (20 U.S.C. § 1806).
The foregoing opinion, which I hereby approve, was prepared by my assistant, Sheila Hyatt.
Yours very truly,
 JOHN ASHCROFT Attorney General