Howell McVey, Ed Johnson, Thomas Clymer, Norvell Goddard, Eugene Grannamen, Dorman L. Buck, J. T. ("Cap") Carlton, and Fred Ervin, Appellants, v. Will Hawkins, Leo LeDure, Joe D. Skinner, C. W. Fears, Wroe Bonnefield, Elmer A. Poorman, Frank Anderson, James Lee, and Commerce Consolidated School District No. 9 of Scott County, Missouri, Respondents, No. 42903—258 S. W. (2d) 927.

Court en Banc, June 8, 1953.

*J. Grant Frye* for appellants.

*David E. Blanton* and *Harry C. Blanton* for respondents.

46

PER CURIAM.—This is an action by resident taxpayers of a Consolidated School District to enjoin the transportation of grade school children by a public school bus for a portion of their way to and from a private parochial school which is located outside of the school district. It appears that such transportation had been expressly authorized by an affirmative vote of the school board and that the entire cost of such transportation had been and was being paid for out of public school funds by warrants drawn upon the "incidental fund" of the district.

Plaintiffs alleged that the use of public school funds of the school district for the purpose of providing transportation for children attending a parochial school ("operated as a private institution") and certain statutory provisions authorizing state aid for such transportation were violative of various provisions of the state and federal constitutions. The trial court found the issues for defendants and entered judgment accordingly. Plaintiffs have appealed.

With minor modifications we shall adopt the statement of facts from an opinion which was prepared in (but was not adopted by) Division One prior to the transfer of this cause to Court en Banc.

Commerce Consolidated School District No. 9, hereinafter referred to as the Commerce District, lies in the northeastern part of Scott County. Plaintiffs-appellants are resident taxpayers of the district. Defendants-respondents are the county superintendent of schools, the board of education of the district, and the driver of the district school

bus. The county superintendent's motion to dismiss as to him was sustained by the trial court and appellants do not complain thereof on this appeal.

Benton Consolidated School District No. 19, hereinafter referred to as the Benton District, lies west of the Commerce District in Scott County. A public elementary or grade school is maintained in the village of Commerce in the Commerce District, and a public secondary or high school is maintained in the village of Benton in the Benton District. The Roman Catholic Church maintains and operates the St. Dennis Catholic School, a private parochial school in Benton, the school offering secular courses up to and including the eighth grade. A half-hour period of religious instruction under the auspices of the Church is given at the St. Dennis Catholic School each school day of the school year. Thirty-one of the children of grade school rating residing in the Commerce District are transported to the public grade school in Commerce; and twenty-two children of high school rating residing in the Commerce District attend the public high school in the Benton District at Benton. Seventeen or eighteen children of grade school rating, the children of families residing in the Commerce District, attend the St. Dennis Catholic School at Benton.

On school days the Commerce District school bus (the property of the Commerce District, maintained by the Commerce District, and operated by the bus driver for a stated salary under contract with the District, the whole expense of the bus operation being payable out of the District's ''incidental fund'') moves through the Commerce District over designated roads and transports the (thirty-one) grade school children of the Commerce District to the Commerce grade school at Commerce. During and after this movement the children attending the Benton high school, and the children attending the St. Dennis Catholic School at Benton, board the school bus and are thereafter transported to a point near the line between the Commerce and the Benton Districts. There the children are received and transported by the Benton District school bus to Benton and discharged at the Benton high school or at the St. Dennis Catholic school. This process or routine method of transportation had been in effect for some years, but had been discontinued during the school year of 1948 and 1949. Presumably the free transportation of the pupils was inaugurated under the provisions of Section 165.140 RSMo 1949, V.A.M.S.

In April 1949 there arose a disagreement among the members of the board of education of the Commerce District relating to the transportation of the school children attending the St. Dennis Catholic School. The six members of the board being evenly divided, the county superintendent of schools cast the deciding vote resolving the question in favor of providing for the transportation of the school children attending the St. Dennis Catholic School. The board voted ''to haul'' the parochial school children to meet the Benton bus where

they could ride that bus to the parochial school in Benton and return. While the petition in the instant action prays for the relief of enjoining the transportation to the St. Dennis Catholic School during the school year of 1950-1951, there was evidence introduced tending to show that the board of education of the defendant Commerce District, or a majority of the members thereof, have said that the transportation of the children attending the St. Dennis Catholic School will be continued unless enjoined.

It is not contended that there is no statute which authorizes transportation of the Commerce District pupils of grade school rating by the Commerce and Benton Districts, or by either or any other District, across the boundary of the Commerce District, and we expressly refrain from examining the question. We shall consider only the constitutional questions raised by the pleadings and urged herein upon this appeal.

Appellants contend that, under the undisputed facts, the conduct of respondents in causing the parochial school children to be hauled in a public school bus to and from a private religious school at public expense and with the public school funds of the district was in violation of specific provisions of the Constitution of Missouri 1945, to wit, Art. IX, §5, providing for the sacred preservation of the State Public School Fund and the restriction of the use of the income therefrom exclusively to the establishment and maintenance of free public schools; Art. IX, §8, prohibiting any appropriation from any public school fund in aid of any religious creed, church or sectarian purpose, or to help to support any institution of learning controlled by any religious creed, church or sectarian denomination; and Art. I, §§6 and 7, providing that no person can be compelled to erect, support or attend any place or system of worship, or to maintain or support any priest, minister, preacher or teacher of any sect, church, creed or denomination of religion, and that no money shall ever be taken from the public treasury "directly or indirectly" in aid of any church, sect or denomination of religion, or in aid of any priest, preacher, minister or teacher thereof, as such.

Appellants also insist that Sec. 165.143 RSMo 1949 V.A.M.S., which authorizes state aid or reimbursement for certain costs of transportation of children, including children attending private, religious or sectarian schools, is violative of the same constitutional provisions.

Appellants further contend that respondents' conduct in transporting school children to and from a private religious school at public expense and with public school funds is violative of the rights of appellants under the constitution of the United States, to wit, the First Amendment (made applicable to state action by the Fourteenth Amendment), "in that it abridges the privileges and immunities of appellants in permitting a practice by the respondents tending to the establishment of a religion." Appellants argue, however, that "it will

50

not be necessary to decide the case on the constitution of the United States,'' because relief should be granted on the basis of the state constitutional provisions.

 Since respondents question the right of appellants to institute and maintain this action, we shall first determine that question. It is contended that there is no proof that appellants ''pay any substantial amount of school taxes,'' as the record is silent as to the *amount* of school taxes paid by the respective appellants and that appellants have failed to show ''any substantial interest in the transportation of these parochial children.'' Respondents further insist that appellants had not exhausted all other remedies because no effort was made to get the Attorney General to institute any litigation with reference to the facts in evidence or to question the legality of the statute. The record shows that appellants, through counsel, sought to have the Prosecuting Attorney of Scott County initiate the litigation and he refused to do so; and that he furnished appellants' counsel with an opinion of the Attorney General of Missouri dated June 9, 1950 to the effect that the legislation relating to the free transportation of pupils attending parochial schools did not violate any constitutional provisions. The opinion referred to was written solely with reference to Sec. 8, Art. IX of the Constitution of Missouri 1945.

The record in this case shows an affirmative vote of the board to provide for the transportation of the parochial children by the public school bus operated at the expense of the district. If the expenditure of public school funds for the purpose mentioned was unlawful, the appellants, as taxpayers, would suffer special and peculiar injury and damage different from the general public. In such case they can maintain an action to enjoin the unlawful expenditure. Appellants' right to institute and maintain the action to test the legality of the use of public school funds for the purpose in question is fully supported by the record presented. Berghorn v. Reorganized School District No. 8, Franklin County, Missouri, No. 43,258, 364 Mo. 121, 260 S. W. (2d) 573; Civic League of St. Louis v. St. Louis (Mo. Sup.), 223 S. W. 891, 893; Hawkins v. St. Joseph (Mo. Sup.), 281 S. W. 420, 421.

 Section 165.140, supra, authorizes the board of directors or board of education of a public school district (in provided circumstances of a two-thirds vote for free transportation, and the making of needful and reasonable rules, State ex rel. Rice v. Tompkins, 239 Mo. App. 1113, 203 S. W. (2d) 881) to pay out of the district's incidental fund for transportation of children to schools, public or private, free of cost to the children and their parents. The Section makes provision, and the Commerce District has paid and is paying for the transportation of children to school as herein stated.

Section 165.140 was enacted in 1911 (Laws of Missouri 1911, p. 397) and was amended (repealed and re-enacted) in 1939 (Laws of Missouri 1939, p. 718) by adding the last proviso of the present section, as

follows: *"Provided* that this section shall include pupils attending private schools of elementary and high school grade except such schools as are operated for profit." As stated, Section 165.143, supra, makes provision for the distribution of state aid for the transportation of pupils. The Section was enacted in 1935 (Laws of Missouri 1935, p. 351). In 1939, the last proviso of the present Section 165.143 was added by amendment (Laws of Missouri 1939, p. 720), as follows: *"Provided*—That for the transportation of pupils attending private schools, between the ages of six and twenty years, where no tuition shall be payable, the costs of transporting said pupils attending private schools shall be paid as herein provided for the transportation of pupils to public schools." Thus it is observed that the Legislature, in amending the original statutes, contemplated transportation of pupils, within stated ages, to public and to private schools (sectarian or non-sectarian), except such private schools as are operated for profit. The incidental fund from which the cost of the transportation is paid is derived from local taxation, collected and paid over to the district, and in part from state aid (Section 165.143, supra) apportioned from the appropriation of state moneys raised by taxation augmented by accrued income derived from the State Public School Fund.

As stated, appellants insist that Sec. 165.143 RSMo 1949 V.A.M.S. is violative of the several constitutional provisions mentioned. In what respects, or why, does not appear from appellants' brief. Section 165.140 RSMo 1949 V.A.M.S., which authorizes such transportation, is not mentioned in plaintiffs' petition or in appellants' brief. However, the answer filed by defendants alleged that whatever transportation had been provided by them for children of school age in their school district had been provided pursuant to the provisions of what are now Sections 165.140 and 165.143, supra.

The trial court refused to pass upon the constitutionality of Section 165.143 on the ground that no matter connected with said section was directly involved herein and that the record showed that the Commerce District received no state aid at any time under Sec. 165.143 *for transporting within the Commerce District the students attending the St. Dennis Catholic School at Benton.* The court found from the evidence that such students had at all times been excluded in the calculations for determining the amount of state aid, since the Commerce District did not complete the delivery of the said students to the parochial school in question and only the Benton District, not a party to this proceeding, received any funds under said section for such transportation.

Respondents insist that this Court may not pass upon the constitutionality of the said statute because the record shows the statute is inapplicable under the facts. Respondents say that the constitutionality of Sec. 165.143 is not before the court as there is no evidence to show that any public funds were paid to the Commerce School District,

or the parochial school for transporting the parochial school children; and that courts will not consider the constitutionality of an act except as applied to the facts in the record before the court. Both Sec. 165.-140 and Sec. 165.143 are relied upon as a defense to the present action and the decisive question here is not what the Commerce District obtains under Sec. 165.143 for transporting the parochial school children, but what use or disposition it makes of the state school funds or state aid which it has received and does in fact receive from the State School Moneys Fund, which includes part of the annual income derived from the Public School Fund of the State. Sections 3 and 5, Art. IX, Constitution of Missouri 1945; Section 161.180 RSMo 1949 as amended Laws 1951, p. 493; Laws 1949, p. 27, Sections 2.120 and 2.121; Sections 165.140 and 165.143, supra.

Section 5, Art. IX, Constitution of Missouri 1945 provides: ''The proceeds of all certificates of indebtedness due the state school fund, and all moneys, bonds, lands, and other property belonging to or donated to any state fund for public school purposes, and the net proceeds of all sales of lands and other property and effects that may accrue to the state by escheat, shall be paid into the state treasury, and securely invested under the supervision of the state board of education, and sacredly preserved as a public school fund *the annual income of which shall be faithfully appropriated for establishing and maintaining free public schools, and for no other uses or purposes whatsoever.*'' (Italics ours). And see Section 161.180, RSMo 1949, as amended Laws 1951, p. 493, V.A.M.S.

Section 161.225, Laws 1951, p. 495, V.A.M.S. provides that ''All interest from the certificates of indebtedness and investments belonging to the state public school fund shall be paid into the state treasury and credited to the state school moneys fund, which is hereby created. All other funds *for the support of free public schools* shall be credited to the state school moneys fund and shall be paid out *for such purposes* on warrants as directed by the state board of education.'' (Italics ours).

Section 3, Art. IX, of the state constitution in part provides: *''All appropriations by the state for the support of free public schools and the income from the public school fund shall be paid at least annually and distributed according to law.* * * * In event the public school fund *provided and set apart by law for the support of free public schools,* shall be insufficient to sustain free schools at least eight months in every year in each school district of the state; the general assembly may provide for such deficiency; but in no case shall there be set apart less than twenty-five per cent of the state revenue, exclusive of interest and sinking fund, *to be applied annually to the* * * * *free public schools.''* (Italics ours).

Pursuant to these constitutional provisions, the Sixty-Fifth General Assemby passed the following acts, to wit: Laws 1949, p. 27.

Section 2.120. "The State Comptroller is hereby authorized and directed to set aside one-third (1/3) of the State Revenue paid into the State Treasury for the biennial period beginning July 1, 1949 and ending June 30, 1951, into a fund to be known as the public school moneys fund; *the same to be used for the support of the free: public schools.*" (Italics ours).

Section 2.121. "There is hereby appropriated out of the public school moneys fund created by the preceding section any and all sums placed in said fund and not previously appropriated for the support of the free public schools; *said sums to be apportioned and distributed: for the support of the free public schools, as provided by law,* for the biennial period beginning July 1, 1949 and ending June 30, 1951." (Italics ours). And see Laws 1951, p. 41, Sections 2.250 and 2.260; and Section 28, Art. IV Constitution of Missouri 1945.

The record of this case shows that the Commerce District had received and retained funds from the state by way of state aid as reimbursement for transporting children by bus. Such money is paid to a school district under the provisions of Section 165.143, supra. Further, Section 165.110 RSMo 1949 required that "All school moneys received by a school district shall be disbursed only for the purposes for which they are levied, collected or received. * * * Money apportioned by the state for transportation and money derived from taxation for incidental expenses shall be credited to the incidental fund." Section 165.140, supra, required the board of education to pay by warrant the expenses for the transportation of school children out of the "incidental fund" of the district. The record in this case shows that between January 1, 1949 and February 12, 1951, the Commerce District paid out of such incidental funds of the district $3839.-51 for the operation of the school bus, as follows: Driver's salary $2030.30, "repairman" $609.60, insurance on bus $116.48, bus supplies $790.47 and gas and oil $292.66. The school children transported daily to and from school included the 31 students attending the Commerce grade school at Commerce and the 22 high school students and the 17 or 18 parochial students, who were transported to and from the point of meeting with the school bus of the Benton District. As stated, all of such transportation had been authorized by the vote of the school board of the Commerce District.

In view of the issues presented on this appeal, we think the essential question is whether the use of the public school moneys, to wit, the incidental funds of the district, for defraying the expenses of transporting the parochial school children to, or part way to and from, a private school is a use for the purpose of "establishing and maintaining free public schools and for no other uses or purposes whatsoever," as provided by Sec. 5, Art. IX of the Constitution. And see Sec. 161.180 RSMo 1949, as amended Laws 1951, p. 493. Also involved is the question of whether the income from the State Public School Fund

is applied "to the support of the free public schools," as provided by Sec. 3, Art. IX and whether such income and the other moneys appropriated are properly used within the meaning of the act of the Legislature setting the fund aside "to be used for the support of the free public schools" and "to be apportioned and distributed for the support of the free public schools." Laws 1949, p. 27, Secs. 2.120 and 2.121. And see Sec. 28, Art. IV, supra. If the use of the fund mentioned for the purpose of transportation of parochial school children to a private school or part of the way to the private school and return is not a use "for establishing and maintaining free public schools," and if the use of the fund or any part thereof is not within the purpose for which it was dedicated and appropriated, the use must be enjoined and the transportation discontinued.

Not only do the respondents insist that the transportation of the parochial school children to the private parochial school in question was expressly authorized by Section 165.140, supra, but respondents in effect contend that the transportation was without cost or expense to the district and without any expenditure of public school funds. Respondents say that the uncontradicted and undisputed evidence shows, as the trial court found, that the school bus of the Commerce District did not travel one foot further, or by any different route, or make any special stops, to transport the parochial school children than would have been required to transport the school children attending the free public schools at Commerce and at Benton; that no additional school buses were required; that the school bus in use had sufficient seating capacity to accommodate both the parochial and public school children without inconvenience; that the bus driver received the same pay that he had received when only the public school children were being transported; and that there was no additional expense or outlay of any kind incurred because of the transportation of the parochial school children within the boundaries of the Commerce District. We find no merit in this argument. One could equally contend that, since the board had expressly authorized the transportation of the parochial school children, the entire cost of the transportation was for their benefit and that the public school children were being transported at no additional expense to the district. We must and do hold that the Commerce District was using public school funds to transport the parochial school children to a private school. If the parts of what are now Section 165.140 and Section 165.143, as added in 1939 (See Laws 1939, pp. 718-720) are in direct conflict with controlling provisions of the Constitution of Missouri 1945, to wit, Section 5 of Article IX, they do not and can not constitute any defense to the present action and must be disregarded. Since the added portions of these sections do conflict with the mentioned constitutional provisions they constitute no defense to the present action. We may not in this proceeding determine the effect of such holding upon the remaining por-

tions of said sections, however, see Missouri Ins. Co. v. Morris (Mo. Sup.), 255 S.W. (2d) 781, 782.

Respondents further contend that the transportation of all school children, including parochial pupils, to whatever schools they may attend is valid and constitutional as a lawful exercise of the police power of the state; that the transportation of the children promotes the health, safety, and welfare of the school children and protects the children from the hazards of the road; that it facilitates compliance with and is complementary to the compulsory education laws of the state; that it is an aid to the children and their parents and not to the parochial school or to the church; that to deny them these same facilities would discriminate against the children because of their religion; and that "even if any benefits accrue to the parochial school, whatever advantages do result are collateral and incidental to the main public purpose of the legislation authorizing the transportation, and thus do not make the statute private in character and therefore invalid."

We need not review the cases cited in support of respondents' contention that the transportation at public expense of all school children to and from whatever schools they may attend (public or private, sectarian or non-sectarian) is a valid, constitutional and lawful exercise of the police power of the state, because in this case we have a very different question, to wit, can such transportation be had to a private school at the expense of the public school fund and with funds limited by the constitution to the exclusive purpose of establishing and maintaining free public schools.

In this case we must answer this question: Where money is set aside from the General Revenue Fund of the state and placed in the Public School Moneys Fund and designated "to be used for the support of the free public schools," and where the annual income of the Public School Fund is by the Constitution of the State expressly ordered to be "faithfully appropriated for establishing and maintaining free public schools and for no other uses or purposes whatsoever," and where such annual income is by statutory authority paid into and credited to the State School Moneys Fund and where such funds are appropriated out of the Public School Moneys Fund by legislative action and ordered "to be apportioned and distributed for the support of the free public schools, as provided by law," and where a part of said funds is paid as state aid or reimbursement into the incidental funds of a school district, can such funds, or any part thereof, be used for the payment of the cost of the transportation of pupils to a private school? Would such use be for the support and maintenance of free public schools? To answer these questions in the affirmative one would have to say that funds used to transport children to a private school supports and aids the maintenance of free public schools. In this particular case, we would have to say that the money spent to.

56

transport the parochial school children part way to and from the St. Dennis Catholic School, a private school in Benton, aids in the maintenance of and helps to support the free public schools of the Commerce District. We cannot do so. We must and do hold that the public school funds used to transport the pupils part way to and from the St. Dennis Catholic School at Benton are not used for the purpose of maintaining free public schools and that such use of said funds is unlawful. It necessarily follows that such transportation of said students at the expense of the district is unlawful and must be enjoined. We express no opinion on any issues not directly decided herein.

The judgment is reversed and the cause remanded for judgment consistent with this opinion.

It is so ordered. All concur.