Dear Dr. Aery:
This is in response to your request for an opinion as follows:
 Does the use of public funds to provide student grants where students also receive institutional[ly] administered scholarships and/or grants based on the students' written commitment to a church-related-vocation constitute use of public funds for sectarian religious purposes and thus violate the provisions of the Missouri Constitution, Article I, Section 7?
It is our understanding that your question asks whether the Coordinating Board for Higher Education, in the course of administering the Student Financial Assistance Program (sometimes known as the "Missouri Student Grant Program"), Sections 173.200 to 173.230, RSMo 1978 and RSMo Supp. 1983 (hereinafter sometimes referred to as the "Act" or the "Program"), may grant public monies to certain students who have committed themselves to a career in church ministry, the result of which is that they receive financial aid from other sources based on that commitment.[1]
Article I, Section 7, Missouri Constitution, states:
 In order to assert our rights, acknowledge our duties, and proclaim the principles on which our government is founded, we declare:
. . .
 That no money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religion, or in aid of any priest, preacher, minister or teacher thereof, as such; and that no preference shall be given to nor any discrimination made against any church, sect or creed of religion, or any form of religious faith or worship.
Section 173.200, RSMo Supp. 1983,[2] states:
 The general assembly, giving due consideration to the historical and continuing interest of the people of the state of Missouri in encouraging deserving and qualified youths to realize their aspirations for higher education, finds and declares that higher education for residents of this state who desire such an education and are properly qualified therefor is important to the welfare and security of this state and the nation, and consequently is an important public purpose. The general assembly finds and declares that the state can achieve its full economic and social potential only if every individual has the opportunity to contribute to the full extent of his capabilities and only when financial barriers to his economic, social and educational goals are removed. It is, therefore, the policy of the general assembly and the purpose of sections 173.200 to 173.230 to establish a financial assistance program to enable qualified full-time students to receive nonreligious education services in a public or private institution of higher education of their choice. [Emphasis added.]
Section 173.215.1(6) states:
 No award shall be made under sections 173.200 to 173.230 to any applicant who is enrolled, or who intends to use the award to enroll, in a course of study leading to a degree in theology or divinity.
The facial validity of Missouri Financial Assistance Program was upheld in American United v. Rogers, 538 S.W.2d 711 (Mo. banc 1976), cert. denied, 429 U.S. 1029 (1976). There, the Missouri Supreme Court upheld the Act against challenges based on theFirst Amendment to the United States Constitution, Article I, Section 6, Article I, Section 7, Article III, Section 38(a), Article IX, Section 8, and Article X, Section 3, Missouri Constitution (1945) (as amended). The Supreme Court expressly noted that additional constitutional challenges to the implementation of the Missouri Financial Assistance Program were permitted. See also, Missouriansfor Separation of Church and State v. Robertson, 592 S.W.2d 825
(Mo.App. 1979).
Thus, the implementation of the act is very important, as is pointed out in the concurring opinion in Americans United:
 In the instant case there is no provision in the statute under attack which directs or authorizes the use by a school of the award money for sectarian religious purposes. To the contrary, it appears that the proscription against the use of such funds for a course of study leading to a degree in theology or divinity clearly evidences a legislative intent that the money not be used for sectarian religious purposes. The coordinating board for higher education is the administrative agency charged with implementation of the program established by sections 173.200-173.235 and is vested with the power to "promulgate reasonable rules and regulations for the exercise of its functions and the effectuation of the purposes of sections 173.200 to 173.235." Sec. 173.210, RSMo Supp. 1975. It is clear from the "purpose" section of the act (sec. 173.200) and the other provisions of the act that it was not the intent of the legislature to provide money for sectarian religious purposes.
Americans United, 538 S.W.2d at 723 (Bardgett, J., concurring).
It appears to us that the crucial question which we must answer is whether the provision of Missouri Student Grant funds to students who are committed to entering the Christian ministry upon graduation constitutes a "sectarian religious purpose".
In rendering this opinion we are aware of Missouri appellate case law holding that the state may not lend school text books to pupils and teachers for use in nonpublic schools, Paster v. Tussey,512 S.W.2d 97 (Mo. banc 1974), cert. denied, 419 U.S. 1111 (1975);Mallory v. Barrera, 544 S.W.2d 556 (Mo. banc 1976); that public funds may not be used to support a parochial school, Berghorn v.Reorganized School District No. 8, Franklin County, 364 Mo. 121,260 S.W.2d 573 (1953); Harfst v. Hoegen, 349 Mo. 808, 163 S.W.2d 609
(1942); and that it is unlawful for public funds to be used to transport students to and from parochial schools, McVey v. Hawkins,364 Mo. 44, 258 S.W.2d 927 (Mo. banc 1953); Luetkemeyer v.Kaufmann, 364 F. Supp. 376 (W.D. Mo. 1973), aff'd, 419 U.S. 888
(1974).
In distinguishing these cases in Americans United, the Supreme Court properly noted that there is a difference between elementary and secondary education and educational opportunities available at the college level. The Court noted:
 [W]e take solace in the fact that the parochial school cases with which this court has dealt in the past involved completely different types of educational entities than the colleges and universities herein involved. As suggested by the proponents: "Institutions of higher education are able to boast of academic freedom, institutional independence, objective instruction, lack of indoctrination, faculty autonomy, mature students and a diversity of religious background in faculty and students." Id. at 722.[3]
In determining whether a grant of Missouri Student Grant funds to a student who is committed to a career in the Christian ministry is a "sectarian religious purpose", we are confronted with the clear language of Section 173.200 and Americans United. The General Assembly and the Supreme Court of this state have concluded that:
 Higher secular education today is unquestionably considered to be a contributing factor toward the betterment of society, and we find nothing in the constitution of this state prohibiting the legislative department from declaring the encouragement thereof a "public purpose". Americans United,
538 S.W.2d at 719.
We conclude, as did the Supreme Court, that "the statutory program does have a primary effect other than the advancement of religion." (Emphasis in original.) Id., at 721.
Given that the primary effect of the Missouri Financial Assistance Program is not the advancement of religion, we are of the view that the public purpose of the program far outweighs the incidental benefit which may result to a religious organization when, and if, a recipient of the funds undertakes a subsequent career in religious work.
CONCLUSION
It is therefore, the opinion of this office, that the award of a Missouri student grant to a recipient who intends to undertake a career in religious work does not violate Article I, Section 7, of the Missouri Constitution.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] In rendering this opinion we answer only the very broad question you ask. We render no opinion as to whether a particular degree program offered by an approved private institution might violate Sections 173.200 and 173.215.1(6), RSMo Supp. 1983.
[2] All statutory references are to RSMo Supp. 1983, unless otherwise indicated.
[3] We note that Section 173.205(2) defines an "approved private institution" as:
 [A] non profit institution, dedicated to educational purposes, located in Missouri, which:
* * *
 (d) Does not discriminate in the hiring of administrators, faculty and staff or in the admission of students on the basis of race, color, religion, sex, or national origin and is in compliance with the Federal Civil Rights Acts of 1964 and 1968 and executive orders issued pursuant thereto. Sex discrimination as used herein shall not apply to admission practices of institutions offering the enrollment limited to one sex;
 (e) Permits faculty members to select textbooks without influence or pressure by any religious or sectarian source;
See also Section 173.205(3)(d) and (e) (defining "approved public institution").