810 F.Supp. 1062 (1993)
Pamela FELTER, Charles Felter and Sarah Felter, a minor, Plaintiffs,
v.
CAPE GIRARDEAU SCHOOL DISTRICT, et al., Defendants.
No. 1:92CV0014SNL.
United States District Court, E.D. Missouri, Southeastern Division.
January 19, 1993.
Order on Reconsideration February 4, 1993.
*1063 Gail Wechsler, Kenneth Chackes, St. Louis, MO, for plaintiffs.
John J. Horgan, Moser and Marsalek, St. Louis, MO, for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
This matter is before the Court upon plaintiffs' Motion for Partial Summary Judgment on the issue of liability and on plaintiffs' claims for declaratory and injunctive relief. Plaintiffs filed a four-count Complaint alleging that defendants, in refusing to provide transportation from plaintiff Sarah Felter's parochial school to her special education classes at public school, have: (1) violated plaintiff Sarah Felter's right to a free and appropriate public education in violation of the Individuals with Disabilities Education Act (hereinafter "IDEA") and its implementing regulations; (2) violated the Rehabilitation Act, 29 U.S.C. § 794 and its implementing regulations; (3) violated plaintiffs' rights to the free exercise of religion in violation of the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983, and plaintiffs' right to liberty of conscience and belief in violation of Art. I, Sec. 5 of the Missouri Constitution; and (4) denying plaintiffs' Equal Protection of the law in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution, 42 U.S.C. § 1983, and Art. I, Sec. 2 of the Missouri Constitution.

I. Standard for Summary Judgment
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Life Mut. Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Co-Op. Inc., 838 F.2d 268, 273 (8th Cir.1988).
*1064 Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

II. Facts
Plaintiff Sarah Felter (hereinafter "Sarah") is enrolled at St. Mary's Cathedral School, a private, parochial school. This enrollment is at the choice of her parents. She also receives special education services at the local public school, pursuant to IDEA, under an Individualized Education Program (hereinafter "IEP") formulated by a team of persons including representatives of defendant Cape Girardeau School District. Sarah attends parochial school for most of the school day, but attends a special education class at the local public school each weekday afternoon as part of her IEP. At a meeting of the IEP team on November 8, 1991, representatives of the School District agreed that "transportation is necessary as a related service for Sarah due to lack of mobility, visual impairment, and school location." Exhibit A to plaintiffs' Complaint. At the same meeting, defendant School District offered three options for providing special education services to Sarah at the public school: (1) providing transportation to and from home if she were a "full day public school student;" (2) providing transportation from the public school to Sarah's home after the end of the school day; and (3) providing a special education class at a different public school close to the home of Sarah's afterschool caregiver, with no transportation provided. None of the options provided for transportation from the public sidewalk in front of the parochial school to the public school special education class, as was sought by plaintiffs.
On or about December 2, 1991, the Felters, through their attorney, requested a due process hearing from the School District on the issue of the transportation component of Sarah's IEP. On or about December 9, 1991, the attorney for plaintiffs received a letter from the representative of defendant Department of Elementary and Secondary Education (hereinafter "DESE") stating that the "issue of whether a child attending parochial school could be transported, by a public school bus, from the parochial school to a public school (to receive special education services) ... would not be an issue hearable under the PL94-142 due process procedures." Exhibit D of plaintiff's Complaint. "[Y]our recourse would be to proceed directly to a court of competent jurisdiction." Exhibit D of plaintiff's Complaint. This action was filed subsequent to receipt of the December 9, 1991 letter from defendant DESE by plaintiffs' attorney.

III. Analysis

A. IDEA Claim
Plaintiffs argue that under IDEA, Sarah is entitled to transportation as a related *1065 service to Sarah's IEP due to Sarah's lack of mobility, her visual impairment, and the location of the schools. Defendants argue that the IDEA, by its clear statutory terms does not require defendants to provide Sarah with transportation between the parochial school and the public school, and furthermore, to do so would violate the Missouri Constitution. The Individuals with Disabilities Education Act (IDEA) expressly requires that entities providing special education services must also provide "related services designed to meet ... [the] unique needs" of each child with a disability. 20 U.S.C. § 1400(c). "The term `related services' means transportation, and such developmental, corrective, and other supportive services ... as may be required to assist a child with a disability to benefit from special education...." 20 U.S.C. § 1401(a)(17). In addition, the United States Department of Education has promulgated regulations pursuant to the IDEA. 34 C.F.R. 300.13 states:
(a) As used in this part, the term `related services' means transportation and such developmental, corrective, and other supportive services as are required to assist a handicapped child to benefit from a special education....
* * * * * *
(b)(13) "Transportation" includes:
(i) Travel to and from school and between schools,
* * * * * *
Comment. With respect to related services, the Senate Report states:
The Committee bill provides a definition of "related services," making it clear that all such related services may not be required for each individual child....
34 C.F.R. 300.13. The Department has also issued 34 C.F.R. 76.654, entitled "Benefits for private school students." The regulation states:
(a) Comparable benefits. The program benefits that a subgrantee provides for students enrolled in private schools must be comparable in quality, scope, and opportunity for participation to the program benefits that the subgrantee provides for students enrolled in public schools.
(b) Same benefits. If a subgrantee uses funds under a program for public school students in a particular attendance area, or grade or age level, the subgrantee shall ensure equitable opportunities for participation by students enrolled in private schools who 
(1) Have the same needs as the public school students to be served; and
(2) Are in that group, attendance area, or age or grade level.
34 C.F.R. 76.654.
Policy rulings by the Office of Special Education Programs (hereinafter "OSEP") have addressed the issue as to whether a public entity should provide transportation as a related service to a student attending parochial school needing the related service. In its policy letter in the case of OSERS, 1988, Exon, Education for the Handicapped Law Reporter (hereinafter "EHLR") 213:125, OSEP stated that "[a] general rule that services will only be offered at the public school site and that the [public school is] not responsible for providing transportation to any private school child who is handicapped is inconsistent with Federal regulations." Id. at 213:126. Similarly, in OSERS, 1988, Cunningham, EHLR 213:125, the agency stated that although transportation must be considered on a case-by-case basis, "the attitude that private school children `should arrange to show up to receive services' is inherently suspect." Id. In OSERS, 1986, Hoffman, EHLR 211:405, the agency addressed an inquiry as to whether a public school district that provides special education classes at the public schools can require parents to transport their children from the private to the public school and determined that in such a situation "transportation would be the responsibility of the public agency, not the parent of the handicapped child." Id. Finally, in Williams, 18 Individuals with Disabilities Education Law Report (hereinafter "IDELR") 742, the agency stated:
[T]he types of special education and related services that a school district provides to [children with disabilities, who *1066 have been offered a free appropriate public education, but have been enrolled by their parents in a private school or facility] will be determined through the process ... of consultation by the public agency with representatives of the private school students, and the preparation of an individualized educational program for those private school students whom it is determined will be served.
Id. at 744 citing 34 C.F.R. § 300.348.
There is a shortage of federal case law construing the IDEA. What has been written, however, is helpful to the resolution of this claim. In Work v. McKenzie, 661 F.Supp. 225 (D.D.C.1987), the plaintiffs argued that the Education for all Handicapped Children Act (hereinafter "EHA"), the predecessor statute to the IDEA, required the school district to provide transportation as a "related service" to the private school the student was attending. Id. at 227-28. The Court stated that the parents could place the child in a public or private school designated by the school district or they could place the child in a private school of their own choosing without approval by the school district. Id. at 228. The Court went on to hold that "[i]f they elect the latter, [the school district] is not required to pay for the school, however, if the private school lacks a special education component that the child requires ... [the school district] would then be required to furnish that service and to provide transportation where necessary." Id. at 228-29. The Court concluded that this did "not mean, however, that [the school district] is required to transport [the student] to and from the [private school]." Id. at 229. The Court's reasoning for denying the transportation component was based upon the fact that the student required a total special education program which the school district would provide by placing the child in the public special education school. Id. The Court determined that the parents' unilateral placement of the student in the private school did not require the school district to incur the obligation of transporting the child. Id.
In McNair v. Oak Hills Local School District, 872 F.2d 153 (6th Cir.1989), the Court, also construing the EHA, addressed whether transportation should be provided as a "related service" to a student attending private school with a special education class at a public school. The Court stated that plaintiff, who had a hearing impairment, needed to establish the following:
(1) that the child is handicapped;
(2) that transportation is a related service;
(3) that the related service is designed to meet the unique needs of the child caused by the handicap; and
(4) the school district must be responsible under the EHA and its regulations for providing the related services under the particular circumstances of the case at hand.
Id. at 156. The Court went on to hold the plaintiffs had failed to show that transportation, the related service, was designed to meet the unique needs of the student. Id. The Court reasoned:
The parties have stipulated that [the student's] handicap does not require any special transportation needs, therefore, she could utilize the same transportation service as a non-handicapped child. The need for transportation, although a related service, is no more unique to [the student] because she is deaf than it would be if she were not deaf. Since the statute specifically requires a relationship between the related service and the unique needs of the child, the third requirement under the EHA has not been satisfied....
Id.
In the present case, plaintiff is a handicapped child who is being provided special education classes under an IEP formulated pursuant to IDEA. As noted above, transportation is a "related service" under the IDEA and its implementing regulations. Furthermore, rulings by the Office of Special Education Programs indicate that there are situations in which a public entity should provide transportation as a related service to a student attending parochial school and attending special education classes at a public school. Thus, the critical *1067 question in the present action, based upon the above-cited case law, is whether or not the related service (transportation) is designed to meet the unique needs of Sarah caused by the handicap. In the report from the meeting on November 8, 1991, in which the issue of transportation was addressed, the Committee stated that it agreed that "transportation is necessary as a related service for Sarah due to lack of mobility, visual impairment, and school location." Exhibit A of plaintiffs' Complaint. The Committee offered three options for transportation at the meeting and in a follow-up letter dated November 21, 1991, none of which included transportation from the sidewalk of the parochial school to the public school, as plaintiffs requested. Based upon the statements by the Committee that transportation is a necessary related service and the above-cited case law and policy statements indicating that transportation may be a necessary related service for a parochial student under certain circumstances, it is the opinion of this Court that defendants are required, as a related service pursuant to IDEA, to provide transportation to Sarah from the sidewalk of the parochial school to Sarah's special education classes at the public school. The Court would like to make it clear that were it not for the statements by the Committee, the necessity of transportation as a related service for any handicapped student would be a factual issue which would defeat summary judgment and would instead be determined by a trier of fact.

B. Federal Establishment Clause
Defendants argue that providing transportation to Sarah would violate the Establishment Clause of the First Amendment of the United States Constitution. Plaintiffs, however, argue that governmental action in providing transportation to Sarah is constitutional under the First Amendment Establishment Clause. The First Amendment of the U.S. Constitution, applicable to the states via the Fourteenth Amendment, states that "Congress shall make no law respecting an establishment of religion." A governmental action does not violate the Establishment Clause as long as it: (1) has a secular purpose; (2) does not have the primary effect of advancing or inhibiting religion; and (3) does not foster excessive government entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (citations omitted).
The U.S. Supreme Court has upheld the constitutionality of numerous governmental actions that have provided benefits to elementary and secondary school students attending parochial schools. Following the Lemon test, the Court has upheld the lending of secular textbooks to children in parochial schools, Meek v. Pittinger, 421 U.S. 349, 359-62, 95 S.Ct. 1753, 1760-61, 44 L.Ed.2d 217 (1975); and the supplying of standardized tests and scoring services, and the providing of diagnostic speech, hearing and psychological testing to children in parochial schools. Wolman v. Walter, 433 U.S. 229, 235-48, 97 S.Ct. 2593, 2598-2605, 53 L.Ed.2d 714 (1977). Three facts were central to the Court's reasoning in these cases. First, the services being provided served an important state interest. Meek, 421 U.S. at 359-62, 95 S.Ct. at 1760-61; Wolman, 433 U.S. at 241-44, 97 S.Ct. at 2602-03. Second, the services provided did not involve the use of parochial school personnel in any way. Wolman, 433 U.S. at 244, 97 S.Ct. at 2603. Third, none of the approved programs provided direct financial benefit to the religious institutions, but, rather, primarily benefitted the child. Wolman, 433 U.S. at 236, 97 S.Ct. at 2599.
On the specific issue of transportation for parochial school students, the United States Supreme Court ruled in 1947 that public schools may provide transportation to students to and from private parochial schools without violating the Establishment clause. Everson v. Board of Education, 330 U.S. 1, 17-18, 67 S.Ct. 504, 512-13, 91 L.Ed. 711 (1947). On the narrower issue of bringing special education classes to disabled parochial school students at neutral sites, the courts have likewise found no Establishment clause violation. See Pulido v. Cavazos, 934 F.2d 912 (8th Cir.1991); Walker v. San Francisco Unified School *1068 District, 761 F.Supp. 1463 (N.D.Cal.1991). In Pulido, the Eighth Circuit Court of Appeals held that the use of publicly-funded mobile vans that travelled next to or directly onto parochial school grounds to provide remedial classes to parochial school students did not violate the Establishment Clause. Pulido, 934 F.2d at 928. In Walker, the Court reached the same result with respect to vans parked on public property next to the parochial school. Walker, 761 F.Supp. at 1470.
Defendants cite to two cases which have involved the Establishment Clause in the context of the EHA/IDEA: Zobrest v. Catalina Foothills School District, 963 F.2d 1190 (9th Cir.1992); Goodall v. Stafford County School Board, 930 F.2d 363 (4th Cir.1991). In Zobrest, the Ninth Circuit Court of Appeals held that it was a violation of the First Amendment for the school district to provide a sign language interpreter to plaintiff, who was deaf, while he attended a parochial high school. Zobrest, 963 F.2d at 1196. In Goodall, the Fourth Circuit held that the EHA did not require the school district to provide a speech interpreter to a deaf student at a private parochial school. Goodall, 930 F.2d at 371-72. The Court noted that there was a compelling interest in not providing an interpreter in that it was the "well-settled law of the Fourth Circuit that the avoidance of a violation of the Establishment Clause of the First Amendment constitutes such a compelling state interest." Id. at 370.
The cases cited by defendants differ from the facts in the present case in that in the cases cited, the issue was whether publicly-funded sign language interpreters could be allowed to work on-site at parochial schools, thereby providing hearing-impaired students with services throughout the school day, including during the teaching of religion. The service at issue herein cannot be equated with a publicly-paid interpreter acting as a conduit for a child's religious training. The service at issue herein, namely access to publicly-funded transportation that would stop by the public sidewalk in front of Sarah's parochial school to take Sarah to her public school special education class: (1) serves an important state interest as required by the IDEA; (2) does not involve the use of parochial school personnel in any way; and, (3) does not provide direct financial benefit to the parochial school, but rather primarily benefits Sarah. Furthermore, it is the opinion of this Court that based upon the facts and the above-cited case law, the service at issue: (1) has a secular purpose; (2) does not have the primary effect of advancing or inhibiting religion; and (3) does not foster excessive government entanglement with religion, as required by Lemon v. Kurtzman, 403 U.S. at 612-13, 91 S.Ct. at 2111. The providing of transportation to Sarah as described above, therefore, does not violate the Establishment Clause of the United States Constitution.

C. Missouri Constitution
Defendants argue that even if the Establishment Clause does not bar the use of public funds to provide transportation to Sarah, the Missouri Constitution prohibits it. Plaintiffs disagree. The Missouri Constitution, Article 9, Section 5 provides in pertinent part:
The proceeds of all certificates of indebtedness due to the state school fund, and all moneys, bonds, lands, and other property belonging to or donated to any state fund for public school purposes ... shall be paid into the state treasury ... and sacredly preserved as a public school fund the annual income of which shall be faithfully appropriated for establishing and maintaining free public schools, and for no other uses or purposes whatsoever.
Mo. Const. art. 9, § 5. Article 9, Section 8 also provides in pertinent part:
the general assembly ... shall [n]ever make an appropriation or pay from any fund or pay from any public fund whatever, anything in aid of any religious creed, church or sectarian purpose, or to help to support or sustain any private or public school, academy, seminary, college, university, or other institution of learning controlled by any religious *1069 creed, church or sectarian denomination whatever....
Mo. Const. art. 9, § 8.
Under existing case law, it would appear that this Court must not only address whether the use of Missouri public funds, pursuant to a federal statute, violates the U.S. Constitution, but also whether such use violates the Missouri Constitution. In Wheeler v. Barrera, 417 U.S. 402, 94 S.Ct. 2274, 41 L.Ed.2d 159 (1974), plaintiffs were parochial school students who were eligible for Title I benefits and argued that the public school authorities, in violation of the Act, failed to provide adequate Title I programs for students as compared with those programs provided for public school children. Id. at 405, 94 S.Ct. at 2277. The United States Supreme Court ruled that Missouri law, not federal law, governed the question as to whether on-the-premises private school instruction was permissible and as to whether federal aid was money donated to any state fund for public school purposes within the meaning of the Missouri Constitution. Id. at 417-19, 94 S.Ct. at 2283-84. The Court noted that "Title I evinces a clear intention that state constitutional spending proscriptions not be preempted as a condition of accepting federal funds." Id. at 417, 94 S.Ct. at 2283. "The correct rule is that the `federal law' under Title I is to the effect that state law should not be disturbed." Id. at 419, 94 S.Ct. at 2284. "Title I requires, not that [state] law be preempted, but, rather, that it be accommodated by the use of services not proscribed under state law." Id. Thus, the Court will address whether the use of Missouri public funds to comply with IDEA is proscribed under state law.
As noted above, public funds have already been used to provide Sarah, a parochial school student, with special education classes, pursuant to an IEP, at the public school. Defendants argue that the use of public funds to provide Sarah transportation to the public school would violate the Missouri Constitution, citing McVey v. Hawkins, 364 Mo. 44, 258 S.W.2d 927 (1953) (en banc) and Luetkemeyer v. Kaufmann, 364 F.Supp. 376 (W.D.Mo.1973). In those cases, the Courts determined that the Missouri Constitution prohibited the use of public funds to provide transportation to parochial school students comparable to that provided to public school students. Thus, under existing case law, the Missouri Constitution prohibits the state from providing transportation to and from the parochial school for parochial school students. The question in the above-styled action is distinguishable, however. In the present action, plaintiffs seek transportation for Sarah only to and from her special education classes at the public school. Plaintiffs do not request that the state provide transportation to the parochial school, which was the issue in McVey and Luetkemeyer. In any event, as previously noted, the District offered to provide transportation for Sarah from the public school to her home after the end of the school day. Thus, the dispute centers about providing transportation for Sarah from the parochial school to the public school in order that she may attend the special education classes at the public school.
In Americans United for Separation of Church and State v. Rogers, 538 S.W.2d 711 (Mo.1976) (en banc), cert. denied, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976), the Missouri Supreme Court held that providing direct financial assistance to college students who attend religiously-affiliated institutions does not violate the Missouri Constitution. In so doing, the Court based part of its reasoning upon the fact that "the program is designed and implemented for the benefit of the students, not of the institutions, and that the awards are made to the students, not to the institution." Id. at 720. Furthermore, the Court noted that "the legislative purpose in no wise includes supporting aiding or sustaining either public or private educational institutions." Id. In the present action, the State is already providing special education classes to Sarah, which would be of much greater benefit to the parochial school than would be providing transportation to the public school. Defendants do not argue that the special education classes violate the Missouri Constitution, only the related service of transportation. The *1070 IDEA seeks to ensure that equitable opportunities are provided for parochial school students to receive special education classes and any necessary related services. The providing of transportation would be a program designed and implemented for the benefit of the student receiving special education at a public school, not the parochial institution, and the service would be provided to Sarah, not in any way to the parochial school. The legislative purpose of IDEA would appear to be to ensure that all disabled students, public or private, receive the opportunity to participate in special education programs and any necessary related services. This purpose is not based upon the aiding or sustaining of private institutions, but rather upon meeting the unique needs of a disabled student.
In Americans United, the Missouri Supreme Court also discussed the distinction between the availability of educational opportunities for college level students and elementary-secondary students and reasoned that assistance to private college students did not have the same religious implications or significance as assistance to private elementary-secondary students because there was lesser availability for free public education at the college level, while parochial school parents unilaterally rejected the free education offered by public schools. Americans United, 538 S.W.2d at 720-21. Although this reasoning may appear to be contradictory to this Court's ruling in the present case, the Court does not think so. Just as there is lesser availability for free public education at the college level, there is lesser availability for special education classes at the private school level. The parents of a disabled student who want their child to receive special education will often be forced to send their child to a public school to take those courses, because the public schools have assumed the obligation to provide these special education services. The Congress has recognized this problem and has, therefore, ensured that the opportunity to participate in the special education programs offered at public schools and any necessary related services be provided to private school students pursuant to IDEA. Under these circumstances, the providing of transportation to special education classes that the public school is already providing to the parochial student is not violative of the Missouri Constitution. As previously stated, this service would benefit the parochial student rather than the institution and would serve the legislative purpose of IDEA without supporting, aiding, or sustaining the parochial school.
Thus, it is the opinion of this Court that plaintiffs' Motion for Partial Summary Judgment on the issue of liability and on plaintiffs' claims for declaratory and injunctive relief should be granted because defendants are required, as a related service pursuant to IDEA, to provide transportation from the sidewalk of the parochial school to Sarah's special education classes at the public school and such action would not violate the Establishment Clause of the United States Constitution or the Missouri Constitution.
It should be noted again that this decision is a narrow one applicable to the facts in Sarah's case. While the legal analysis is controlling, each case must be decided on its own set of facts.

D. Injunctive Relief
In order for this Court to enter the permanent injunctive relief requested by plaintiffs, three prerequisites must be satisfied. Roe v. Operation Rescue, 919 F.2d 857, 867 n. 8 (3d Cir.1990). First, the Court's exercise of equity jurisdiction must be proper. Id. In order to satisfy this prerequisite, the plaintiff must show that he has no adequate legal remedy; the threatened injury is real, not imagined; and, no equitable defenses exist. Id. "Second, the plaintiff must actually succeed on the merits of its claims." Id. Finally, the "plaintiff must show that the balance of equities tip in favor of injunctive relief." Id.
In the present case, plaintiff has satisfied these requirements. In addition, defendants have not argued that any equitable defenses exist. Thus, it is the opinion of this Court that a permanent injunction *1071 should be entered in favor of plaintiffs ordering defendants to provide transportation from the sidewalk of the parochial school Sarah attends to her special education classes at the public school.

E. Equal Protection, Rehabilitation Act and Free Exercise Claims
In that the Court has found liability and will order injunctive relief based upon plaintiffs' IDEA claims, the Court declines to address plaintiffs' Equal Protection, Rehabilitation Act and Free Exercise Claims.

ORDER
In accordance with the Memorandum filed herein this day,
IT IS HEREBY ORDERED that plaintiffs' Motion for Partial Summary Judgment is GRANTED with respect to plaintiff's IDEA claim and claims for injunctive and declaratory judgment regarding the IDEA claim.
IT IS FURTHER ORDERED that defendants are hereby permanently enjoined and ordered to provide transportation to plaintiff Sarah Felter from the sidewalk of her parochial school to the special education classes she attends at the public school for so long as she receives special education classes at a public school pursuant to IDEA.

On Reconsideration

MEMORANDUM
This matter is before the Court upon the state defendants' Motion to Reconsider. On January 19, 1993, this Court entered an Order in the above-styled cause permanently enjoining, the defendants to provide plaintiff Sarah Felter with transportation from the sidewalk of the parochial school she attends to her special education classes at the public school, as required by the Individuals with Disabilities Education Act (hereinafter "IDEA"). State defendants move the Court to reconsider its Order arguing that the Court is creating new law in Missouri and not applying existing law. The state defendants believe that the Court's reasoning adopts the pupil benefit theory which has been rejected by Missouri state courts. Defendants, therefore, request that the Court clarify its Order and omit any reference to the pupil benefit theory.
In the January 19, 1993 Order, the Court referenced Americans United for Separation of Church and State v. Rogers, 538 S.W.2d 711 (Mo.1976) (en banc), cert. denied, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976). The Court went on to note that the Missouri Supreme Court based part of its reasoning, in finding that the statute did not violate the Missouri Constitution, upon factors such as whether the program benefitted the students, rather than the institution, and whether the legislative purpose did not include sustaining either private or public educational institutions. The Court believes that the state court did base part of its ruling in Americans United upon these factors, but in no way believes that the Missouri Supreme Court adopted the pupil benefit theory. Furthermore, this Court, in its January 19, 1993 ruling, did not adopt said theory or even suggest that the pupil benefit theory should be adopted. The Court believes that the above factors were only two of many factors which the Missouri Supreme Court considered in its ruling, and they would not, in themselves, be sufficient to support such an outcome. The Court's citation to Americans United was more appropriate for the purpose of noting that there are certain situations, based upon the specific facts of the case, in which a parochial school student may be entitled to some statutory benefit without that statute violating the Missouri Constitution. Under the Missouri Constitution, this is a strict standard which will not often be attained.
As stated in this Court's previous Order, the public schools' providing of special education classes for children attending parochial schools entitles some of those parochial school children to related services, if designed to meet the unique needs of the child, to which most parochial school children are not entitled. The ruling in the present case, finding that there is no violation of the Missouri Constitution, is primarily *1072 based upon the fact that the Individualized Education Program team found that transportation was a necessary related service for Sarah and upon Sarah's unique status as a public and parochial school student. The public school's assumption of her special education pursuant to the IDEA entitles her to any necessary related services which the IDEA provides. This holding is not based upon the pupil benefit theory.
Furthermore, the Court's January 19 Order is not contradictory to holdings in McVey v. Hawkins, 258 S.W.2d 927 (Mo. 1953) (en banc) and Luetkemeyer v. Kaufmann, 364 F.Supp. 376 (W.D.Mo.1973), in which the courts found that the Missouri Constitution prohibits the use of public funds to provide transportation to parochial school students. Sarah's unique needs and status as both a public school and private school student entitles her, pursuant to the IDEA, to transportation solely for the public school portion of her education. Any statute providing transportation to a parochial student, rather than a parochial school and public school student such as Sarah, would violate the Missouri Constitution.
As stated in the Court's previous Order, both that Order and the present one are narrow and limited to the facts applicable in Sarah's case. While the legal analysis is controlling, each case must be decided on its own set of facts.